# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 1, 2024 Session

## KATHERINE POLING ROBESON v. TRAVIS WILSON ROBESON

**Appeal from the Chancery Court for Williamson County**
**No. 20CV-49972     Michael Binkley, Chancellor**

_____

### No. M2023-01449-COA-R3-CV

_____

In this divorce action the husband appeals the classification of two substantial assets as marital property, each of which he contends are separate property because they were gifted to him by his father. The husband also challenges the trial court's determination of his income for purposes of child support and alimony. On different grounds, the wife challenges the trial court's determination of the husband's income for child support purposes. The wife also appeals the trial court's denial of her request for attorney's fees as alimony in solido based upon its finding that her fees had been paid out of marital assets pursuant to Tennessee Code Annotated § 36-4-121 and that an award of alimony in solido would constitute "double dipping." She further seeks an award of her attorney's fees on appeal. We affirm the trial court's determination of the husband's income for purposes of child support and alimony. Moreover, we affirm the classification of the 7.6-acre parcel with the cabin as marital property but reverse the classification of the husband's partnership interest in Berry's Chapel Ventures, LLC, as marital property and remand with instructions to classify it as Husband's separate property. We further find that the appreciation in the value of the husband's interest during the marriage is his separate property. Resultingly, on remand, the trial court is to reconsider the equitable division of the marital estate and enter judgment accordingly. Because of significant changes in the marital estate, we vacate the award of alimony in futuro and remand with instructions to reconsider this award upon settling the marital estate and to enter judgment accordingly. We affirm the trial court's denial of Wife's request for attorney's fees as alimony in solido, albeit on different grounds. Each party shall be responsible for their attorney's fees and expenses incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; Vacated in Part; and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Donald N. Capparella and Jacob A. Vanzin, Nashville, Tennessee, for the appellant, Travis Wilson Robeson.

William P. Holloway and Joshua L. Rogers, Franklin, Tennessee, for the appellee, Katherine Poling Robeson.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Travis Wilson Roberson ("Husband") and Katherine Poling Robeson ("Wife") were married on June 26, 2004. During the 18-year marriage, the parties had two children together, a son and a daughter (collectively, "the Children").[1]

Husband is a realtor who specializes in selling farmland. In addition to his earnings from his real estate practice, which fluctuate, Husband earns income from several other sources. Before the parties married, Wife worked in advertising sales, and later for Husband's father's company doing website design and as a part-time substitute teacher. After the birth of the parties' first child in 2008, Wife became a stay-at-home mother and did not work outside of the home until March 2022, when she began working part-time at a retail clothing store for $18 an hour and occasionally substitute teaching.

Approximately nine months before the marriage, Husband's father, Gerald Robeson (hereinafter "Husband's Father"), purchased a 200-acre parcel of land on Hyde Road in Lynnville, Tennessee. As a part of the purchase, the Father allowed Husband to purchase 50 acres of that land, resulting in Husband's Father owning 150 acres and Husband owning the adjoining 50 acres. After the parties were married, a log cabin was built on what was believed to be Husband's 50-acre parcel.[2] However, a survey later revealed that the cabin had been built on the 150-acre parcel owned by Husband's parents. Thus, on August 2, 2007, Husband's Father executed a quitclaim deed which conveyed to Husband a 7.6-acre portion of property upon which the cabin was situated.

In November 2004, Husband's Father formed a closely held limited partnership known as Berry's Chapel Ventures ("BCV"). At the time of BCV's formation, Husband's father and mother each owned 1% interests as general partners, and the Gerald Robeson Family Trust ("the Family Trust"), of which Husband and his sister, Keely, were the sole beneficiaries, owned the remaining 98% interest as the limited partner. BCV owns three

---

[1] Both spouses are graduates of the University of Tennessee. At the time of trial, Husband was 43 years old, Wife was 41 years old, and both children were minors.

[2] The parties dispute who was primarily responsible for building the cabin. While Husband maintains that the cabin was built by the Father, Wife argues that she and Husband met with builders and designed the cabin.

parcels of real estate: a vacant lot; a lot with a restaurant; and a lot with two commercial properties. After BCV was formed, Husband began managing the leases for the three BCV properties and received a fee for his work paid to him through his real estate broker, Fridrich & Clark.

On December 2, 2020, Wife filed a complaint for divorce against Husband in the Chancery Court for Williamson County, alleging grounds of irreconcilable differences and requesting, *inter alia*, that she be named the primary residential parent of the Children. She also requested that Husband pay her alimony and any attorney's fees and costs incurred in prosecuting the divorce. Husband filed an answer in January 2021. In August 2022, Husband filed a counter-complaint for divorce, alleging irreconcilable differences and inappropriate marital conduct. Wife then amended her complaint to add a claim for inappropriate marital conduct by Husband and filed an answer to Husband's counter-complaint.

The case was tried over three days on August 22, 23, and 24 of 2022. Following trial, but before the court issued its ruling, the parties came to an agreement regarding all parenting issues, less the issue of Husband's income for child support purposes, which was reserved for the court's determination. In October 2022, the court approved and entered the parties' permanent parenting plan. Based on the parties' stipulation that each should be entitled to a divorce from the other based on inappropriate marital conduct, in January 2023, the court entered an order declaring both parties divorced pursuant to Tennessee Code Annotated § 36-4-129. Thereafter, the remaining issues to be decided by the court were the classification and equitable division of the marital estate, the calculation of Husband's income for child support purposes, all alimony issues, and Wife's request for attorney's fees.

The court ruled on the remaining issues in a 64-page memorandum and order entered April 6, 2023, which fully incorporated the provisions of the parties' permanent parenting plan. As an initial matter, the court found that the trial testimony of Husband and his father was "evasive, suspicious, lacking in candor, or not worthy of belief[,]" while Wife's testimony was "more forthcoming, straightforward, and consistent." Accordingly, the court determined that it would credit Wife's testimony where it conflicted with that of Husband and Husband's Father.

The parties disputed the classification of four assets. However, only two assets are at issue in this appeal—the 7.6-acre cabin property ("the Cabin Property") and Husband's interest in BCV. Both assets were conveyed by Husband's Father to Father during the marriage. Wife claimed they were marital property because they were conveyed to Husband during the marriage while Husband claimed that they were his separate property because he received them as gifts from his father.

The trial court concluded that both assets were marital property.[3] As to the Cabin Property, which the court valued at $489,800.00, the court found that Husband had failed to present clear and convincing evidence that the property was "acquired by him individually within the meaning of Tenn. Code Ann. § 36-4-121(b)(4)(D)." Although the court acknowledged that the quitclaim deed transferring title of the Cabin Property bore only Husband's name, which is "some evidence the property was intended to be separate[,]" the court concluded that the totality of the circumstances indicated that the cabin situated on the property was "conceived as a marital home for the parties."

With respect to Husband's interest in BCV, which the court valued at $915,469.90, the court found that "Husband conceded that he had no documents, statements, tax returns, or any other evidence supporting the existence of a gift[.]" Furthermore, the court found that Husband's testimony on this issue was "insufficiently credible to satisfy his burden of clear and convincing evidence." Accordingly, the court concluded that Husband failed to rebut the presumption that his interest in BCV was marital property by presenting clear and convincing evidence that he had received it as a gift. Even if Husband had carried his burden, the court determined that the value by which his interest appreciated during the marriage would be marital property under § 36-4-121(b)(2)(B)(i) because both he and Wife made substantial direct and indirect contributions its appreciation.

The court valued the entire marital estate at $1,993,099.29. Finding that an equitable division of the marital estate militated in favor of two approximately equal shares, the court awarded each party assets totaling $996,549.65. To effectuate the 50/50 distribution, Husband was awarded the Cabin Property and his interest in BCV, *inter alia*, and was ordered to pay Wife a one-time distributive judgment of $888,856.53. The trial court further ordered Husband to pay all of the parties' marital debt in the amount of $10,438.70.

In determining Husband's income for child support purposes, the court noted that he earns variable income and that, under the Tennessee Child Support Guidelines, averaging is the correct method of determining the gross income of a parent with variable income. Using a five-year, 60-month average, the court found that Husband has an "average adjusted gross income for child support purposes [of] $34,613.25, which represents his gross income less self-employment tax for years 2017 through 2021 ($1,656,795), divided by 60 months ($27,613.25), plus $7,000." (Footnote omitted). The court imputed the additional $7,000 per month in income to Husband under the Tennessee Child Support Guidelines[4] based on its finding that he was currently living rent free in a

---

[3] Other assets that are not at issue in this appeal were classified as Husband's separate property, which the court valued at $2,357,089. The trial court did not classify any property as Wife's separate property.

[4] The Guidelines instruct that, when calculating a parent's gross income, a court "shall include. . . [g]ifts. . . which reduce[] a parent's living expenses such as housing paid by others; in whole or in part[.]" Tenn. Comp. R. & Regs. 1240-02-04 .04(3)(a)(1)(xviii).

home owned by his parents.[5]  Thus, the court calculated Husband's monthly child support obligation as $3,033.38.

Turning to alimony, the court applied the alimony factors enumerated in Tennessee Code Annotated § 36-5-121(i) and made findings of fact as to each factor, noting that the most important factors are "the disadvantaged spouse's need for support and the obligor spouse's ability to pay." The court noted that "according to its previous findings . . . Husband's net-average income per month is $27,613.25."  After the payment of child support and his reasonable monthly expenses, the court found that Husband has surplus monthly income of $15,234.39 "from which he can easily make a reasonable alimony payment each month to Wife[.]" The court then reduced Wife's reasonable expenses by her anticipated income and concluded that she has a reasonable need of $7,390.62 per month. Upon weighing the remaining factors, the court determined that "Wife cannot be reasonably rehabilitated to the standard of living enjoyed during the marriage of the parties or to the standard of living Husband will enjoy after the divorce." Accordingly, the court found that alimony in futuro was appropriate and awarded Wife alimony in futuro in the amount of $6,800.00 per month.[6]

As for Wife's request for attorney's fees, the court noted that "[a]ttorneys' fees in divorce cases have been amended in the Family Law Code at T.C.A. §§ 36-4-121 and 36-5-121." Specifically, unpaid attorney's fees incurred in divorce proceedings through the date of the final hearing are now considered marital debt for purposes of equitable distribution. *See* Tenn. Code Ann. § 36-4-121(b)(1)(B). Because of the new rules to be applied to marital debt, the court found that it would hold an additional hearing to determine how it would resolve Wife's attorney's fees.

Then, on September 26, 2022, the trial court approved an agreed order pursuant to which the parties agreed that Husband's and Wife's outstanding attorney's fees incurred through that date shall be paid out of marital funds. Acting pursuant to the agreed order, Wife's attorney's fees of $122,265.10 and Husband's attorney's fees of $88,470.60 were paid out of marital funds.

On April 19, 2023,[7] Wife filed her motion for attorney's fees and/or to allocate marital debt. Therein, Wife requested attorney's fees as alimony in solido in the amount of

---

[5] Husband testified that this residence would rent for approximately $8,000 to $10,000 per month.

[6] The court found that the alimony payments shall be retroactive to September 1, 2022, and awarded Wife a judgment in the amount of $54,400.00 for alimony arrearages.

[7] That same day, Wife filed a motion to alter or amend. The trial court entered an order on Wife's motion to alter or amend on June 25, 2023, finding, *inter alia*, that Husband must pay Wife retroactive child

$153,704.10, representing her total fees and expenses incurred during the proceedings. While Wife acknowledged that her attorneys had already been paid $122,265.10 out of marital funds, she averred that these assets were also used to pay Husband's attorneys and that she should not be required to further deplete her share of the marital estate to pay her remaining outstanding attorney's fees and costs.

Wife also requested her reasonable and necessary attorney's fees and expenses incurred in litigating and prevailing upon the issues of custody pursuant to Tennessee Code Annotated § 36-5-101(c). In June 2023, Wife's attorneys submitted an updated attorney's fee affidavit reflecting that Wife had incurred $44,576.25 in attorney's fees related to custody and parenting issues.

On June 28, 2023, the trial court entered an order ruling on Wife's requests for attorney's fees. The trial court denied Wife's request for $153,704.10 in attorney's fees as alimony in solido, reasoning that such an award would result in impermissible "double dipping" because Wife's attorneys had already been paid $122,265.10 out of marital assets. However, because Wife was the prevailing party with respect to the custody issues, the court found that she was entitled to recover her attorney's fees incurred in litigating those issues under Tennessee Code Annotated § 36-5-103(c) and awarded her a judgment against Husband in the amount of $44,576.25.

The court determined that Wife had outstanding attorney's fees and expenses of $41,759.00, while Husband had outstanding attorney's fees and expenses of $29,662.37, and that these unpaid fees and expenses were marital debt to be divided equally between the parties. The court awarded Wife judgment against Husband in the amount of $6,048.32 "to equalize the division of marital debt."[8]

This appeal by Husband followed.

---

support in the amount of $10,268.52 and past due medical bills of $569.17. Husband also filed a motion to alter or amend, which the trial court denied.

[8] Husband subsequently filed a motion to review the award of attorney's fees for custody related issues, which the trial court denied.

ISSUES

Husband and Wife each present issues for our review, which we consolidate and restate as follows:

1. Whether the trial court erred in determining Husband's income for purposes of child support and alimony.

2. Whether the trial court erred in classifying the Hyde Road Property and Husband's interest in BCV as marital property.

3. Whether the trial court erred in denying Wife's request for attorney's fees as alimony in solido.

4. Whether Wife is entitled to her attorney's fees on appeal.

## STANDARD OF REVIEW

We review child support determinations under an abuse of discretion standard. *Buntin v. Buntin*, 673 S.W.3d 593, 601 (Tenn. Ct. App. 2023) (citing *Mayfield v. Mayfield*, 395 S.W.3d 108, 114–15 (Tenn. 2012); *State ex rel. Williams v. Woods*, 530 S.W.3d 129, 136 (Tenn. Ct. App. 2017)). As we explained in *State ex rel. Vaughn v. Kaatrude*:

> This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

Likewise, we review a trial court's decision regarding the nature, amount, and duration of alimony under an abuse of discretion standard. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Robertson v. Robertson*, 76 S.W.3d 337, 343 (Tenn. 2002)).

Questions related to the classification of assets present questions of fact, which we review de novo with a presumption of the correctness, unless the evidence preponderates otherwise. *Long v. Long*, 642 S.W.3d 803, 818 (Tenn. Ct. App. 2021) (citing Tenn. R. App. P. 13(d)). For the evidence to preponderate against a trial court's factual finding, it must support another finding of fact "with greater convincing effect." *Wheeler v. Wheeler*, No. M2012-02154-COA-R3CV, 2014 WL 1512828, at *3 (Tenn. Ct. App. Apr. 15, 2014) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)).

When it comes to live, in-court witnesses, appellate courts afford trial courts considerable deference when reviewing factual findings based on credibility determinations because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Id.* (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).

### ANALYSIS

### I. HUSBAND'S EARNING CAPACITY

Generally speaking, Husband contends the trial court abused its discretion in setting the amount of alimony in futuro and child support to be paid by him by substantially overestimating his earning capacity based upon a clearly erroneous assessment of the record.[9]

---

[9] Husband presented a total of seven issues, three of which relate to the subject of his income and the trial court's award of alimony and child support. They read as follows:

1. The Trial Court abused its discretion in setting the amount of alimony in futuro and child support paid by Husband, by substantially overestimating Husband's earning capacity based upon a clearly erroneous assessment of the record.
2. The Trial Court abused its discretion in averaging Husband's income over many years for purposes of alimony and child support, when Husband's income was steadily declining in the years before the trial.
3. The Trial Court abused its discretion in excluding Husband's income from 2022 and 2016 from its analysis of Husband's earning capacity, where (1) his 2022 income was relevant as the most current information about his earning capacity, (2) and his 2016 income was also relevant given the Trial Court's inclusion of Husband's outlier 2020 income, thereby skewing Husband's earning capacity higher than he actually earns.

Specifically, Husband contends the trial court abused its discretion by averaging his income over many years for purposes of alimony and child support, when his income was "steadily declining" in the years before the trial.

Alternatively, if averaging his income was the correct method of determining his earning capacity for purposes of child support and alimony, Husband contends that the trial court abused its discretion by excluding his income from 2022 and 2016 from the average where (1) his 2022 income was relevant as the most current information about his earning capacity, and (2) his 2016 income was also relevant given the trial court's inclusion of Husband's outlier 2020 income, thereby skewing Husband's earning capacity higher than he actually earns.

A.

We begin by noting that the amount of Husband's income for 2017 through 2021, which the trial court relied upon, is not in dispute. However, his income for the seven months of 2022 leading up to the trial in August of 2022 is disputed.

Wife's Exhibit 59, which was agreed to by the parties and adopted by the trial court, provided a summary of Husband's gross income from all sources based on the parties' income tax filings for 2017 through 2021. And as the trial court noted in a footnote, "The parties further agreed the charted figures properly represent Husband's income after business expenses, as provided by the Child Support Guidelines for self-employed parents. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(3)." Exhibit 59 reads as follows:[10]

| Year | Gross Income | Total Tax Liability | Net Income |
|---|---|---|---|
| 2021 | $ 489,290.00 | $ 129,180.00 | $ 360,110.00 |
| 2020 | $ 1,234,163.00 | $ 409,519.00 | $ 824, 644.00 |
| 2019 | $ 99,488.00 | $ 9,818.00 | $ 89,670.00 |
| 2018 | $ 206,518.00 | $ 37,006.00 | $ 169,512.00 |
| 2017 | $ 291,527.00 | $ 78,668.00 | $ 212,859.00 |
| 5 YEAR TOTAL | $ 2,320,986.00 | $ 664,191.00 | $ 1, 656,795.00 |
| Annual Average | $ 464,197.20 | $ 132,838.20 | $ 331,359.00 |
| Monthly Average | $ 38,683.10 | $ 11,069.85 | $ 27,613.25 |

Thus, the amount of Husband's gross and net income from all sources for these five years is not in dispute.

---

[10] The bottom two rows, less the calculation of Husband's average net annual and monthly income, were not included in Wife's original Exhibit 59 but were added by Wife in her appellee brief "so as to complete the mathematical calculations for the Court." For clarity and completeness, we include them here.

B.

Husband contends on appeal that the trial court erred by applying an "income averaging approach" because "his income for purposes of alimony and child support was steadily declining and should not have been averaged." Wife notes, however, that "at no point [during trial] did Husband argue his income was steadily declining or that an average would be inappropriate." Further, the trial court states in its memorandum and order that "the parties agree Husband's income should be averaged," and Husband fails to cite to the record where he raised this issue in the trial court. Thus, Wife contends this issue is waived.

"'It is well-settled that issues not raised at trial may not be raised for the first time on appeal.'" *Hill v. Moncier*, 122 S.W.3d 787, 792 (Tenn. Ct. App. 2003) (quoting *State Dept. of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996)). We conclude that Husband has waived this issue by failing to raise it in the trial court.

C.

In the alternative, Husband contends that the trial court erred by using 2017 through 2021 to average his income, insisting that this five-year period "substantially overestimated" his earning capacity. Instead, Husband contends that the court should have included 2016 in its average, as well as the first seven months of 2022, while excluding 2020, which he contends was an "outlier." As stated by Husband, using these years would have produced a "far more accurate representation of his income."

For her part, Wife contends that the five-year, 60-month average adopted by the trial court was the appropriate period to consider. She further notes that the time period to be used in averaging was within the trial court's discretion, which requires our deference. As for 2022, Wife notes, as the trial court did, that while Husband's income from the seven months prior to trial was his most current income, Husband admitted at trial that he had failed to include income from several sources in his 2022 income summary. Thus, 2022 did not accurately reflect his current income. As for 2016, Wife contends it was too remote in time to be relevant.

Determining a party's income is a question of fact that "require[s] careful consideration of all the attendant circumstances." *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005) (citing *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002); *Willis v. Willis,* 62 S.W.3d 735, 738–39 (Tenn. Ct. App. 2001)). Trial courts consider a wide array of factors in determining a party's earning capacity for purposes of alimony, including his or her age, past and present employment, education and training, and ability to work. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 116–119 (Tenn. 2012); *Pearson v. Pearson*, No. W2018-01188-COA-R3- CV, 2019 WL 2394247, at *7 (Tenn. Ct. App. June 6, 2019). Similar factors are used in imputing additional gross income to a

parent when determining child support. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2).

Generally, an award of child support should be set based upon the obligor parent's "most recent, actual income." *Smith v. Smith*, No. M2000-01094-COA-R3-CV, 2001 WL 459108, at *4–5 (Tenn. Ct. App. May 2, 2001). However, under the Tennessee Child Support Guidelines ("the Guidelines"), income averaging is appropriate when a parent receives variable income. *Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *5 (Tenn. Ct. App. Nov. 25, 2015) (citing Tenn. Comp. R & Regs. 1240-2-4-.04(3)(b)). When averaging variable income, "'[t]he time period to be used lies within the discretion of the trial court based upon the facts of the situation.'" *State ex rel. Moss v. Moss*, No. M2013-00393-COA-R3CV, 2014 WL 1998738, at *3 (Tenn. Ct. App. Apr. 24, 2014) (quoting *Smith*, 2001 WL 459108, at *6).

The trial court agreed with Wife that a five-year average was appropriate. As the trial court noted:

> Husband contends his 2020 income should be excluded or adjusted because it was aberrational; the housing market was hot, and he earned nearly a half-million dollars in commissions from sales of his father's properties. There is no basis in the Child Support Guidelines or case law to remove or adjust Husband's 2020 income on the ground it was unusual or higher than other years. To the contrary, excluding Husband's 2020 income would be error, because the Child Support Guidelines require consideration of recent, actual income, whether temporary, non-recurring, or isolated. The Court in fact normalizes Husband's 2020 income by averaging it with the surrounding years of income.

As for 2016 and 2022, the trial court stated, "As proposed by Wife, the Court further exercises its discretion (1) to exclude Husband's 2016 income as insufficiently recent, given the lack of appellate court authority for reaching seven years into the past; and (2) to exclude Husband's 2022 purported income as incomplete, for failure to include regular income." And as for his income in 2022, the court found it was "incomplete, for failure to include regular income."

As noted above, "'[t]he time period to be used [in averaging income] lies within the discretion of the trial court based upon the facts of the situation.'" *State ex rel. Moss*, 2014 WL 1998738, at *3 (quoting *Smith*, 2001 WL 459108, at *6). Discretionary decisions are reviewed under the abuse of discretion standard. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the trial court. *Id.* Nevertheless, the abuse of discretion standard of review does not immunize a lower court's decision from meaningful appellate scrutiny:

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Id.* (citations omitted). Discretionary decisions require "a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015) (citing *Lee Med., Inc.*, 312 S.W.3d at 524).

We find the exclusion of 2016 appropriate because, as the trial court found, it was "insufficiently recent," meaning that it was too remote. We also find the exclusion of the first seven months of 2022 to be appropriate because, as Husband admitted, it did not include all of his income for that period and, as the trial court found, "Husband's 2022 purported income [was] incomplete for failure to include regular income."[11] As for 2020, there is no justification for excluding Husband's most lucrative year while including the four years that were less lucrative. Indeed, as the trial court correctly found, "[t]he Court in fact normalizes Husband's 2020 income by averaging it with the surrounding years of income."

For these reasons, we hold that the trial court did not abuse its discretion in averaging Husband's income over the five-year, 60-month period of 2017 through 2021 to determine his earning capacity for purposes of alimony and child support.

## II.   CHILD SUPPORT – IMPUTED MONTHLY INCOME OF $7,000

---

[11] As Wife notes in her appellee brief:

> Husband has multiple sources of income. First, he earns income through Travis Robeson Properties as a real estate agent. Second, he receives W-2 income from Robeson Sewing Machine Company. Third, Husband receives a self-directed management fee for his management of the Robeson Trust No. 4. Fourth, Husband receives income from Columbia Investment Group. Fifth, Husband has income that is earned and reinvested into Berry's Chapel Ventures. Finally, Husband earns approximately $1,500 per year selling lambs.

(Citations to the record omitted).

Husband and Wife each contend, for different reasons, that the trial court erred in setting Husband's child support obligation.[12]

Husband contends the trial court erred by imputing an additional $7,000 per month in income as a recurring monthly gift from his parents based upon its finding that he was living rent free at a residence owned by his parents. Husband argues that "it is illogical to treat the absence of an expense as income, as Husband cannot use that lack of a rent expense to pay alimony and child support."

For her part, Wife states that the trial court did not err in adding the $7,000 monthly gift, the value of the housing provided by Husband's parents, to his monthly income "for child support purposes only." *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(1)(xviii). However, she contends that the trial court erred by adding the $7,000 monthly gift to Husband's average "net income" instead of to his average "adjusted gross income" as is required by the Tennessee Child Support Guidelines ("the Guidelines").

The Guidelines define adjusted gross income, in pertinent part, as follows:

(1) "Adjusted Gross Income" -- The Adjusted Gross Income (AGI) is the net determination of a parent's income, **calculated by modifying the parent's gross income as follows:**

. . .

(b) **Deducting from gross income any applicable self-employment taxes being paid by the parent[.]**

Tenn. Comp. R. & Regs. 1240-02-04-.02(1) (emphasis added). "Gross income" means "all income from any source[,]" **including "[g]ifts that . . . reduce[] a parent's living expenses such as housing paid by others; in whole or in part**[.]" Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(1)(xviii) (emphasis added).

Here, the trial court found that Husband was living rent free in a residence owned by his parents, which Husband admitted, and the Guidelines require that such gifts be included in a parent's adjusted gross income calculation. Thus, we affirm the trial court's decision to impute $7,000 as additional monthly income to Husband for child support purposes only.[13]

---

[12] We note that Husband suggests that the imputed gift of $7,000 was added to his income for purposes of child support and alimony in futuro; however, the record is clear that the imputed income of $7,000 was only added to Husband's income for child support purposes, not alimony.

[13] Husband does not contest the amount of the imputed gift, $7,000 per month. Further, he testified that the property he resides in would rent for $8,000 to $10,000 per month.

We now turn our attention to Wife's contention that the trial court erroneously added the imputed income to Husband's "net income" instead of his "adjusted gross income" when calculating his child support obligation.

The trial court's order states that "Husband's average adjusted gross income for child support purposes is $34,613.25, which represents his gross income less self-employment tax for years 2017 through 2021 ($1,656,795), divided by 60 months ($27,613.25), plus $7,000." Wife contends the trial court erred by adding the $7,000 housing gift to the 60-month average of $27,613.25, a sum she contends was Husband's net income. Instead, she argues that Husband's adjusted gross income was $38,683.10 per month, not $27,613.25. By adding the imputed income of $7,000 per month to $38,683.10, Wife claims that Husband's total adjusted gross income would be $45,683.10 per month, not $34,613.25 as stated in the trial court's order. We respectfully disagree.

The $38,683.10 figure Wife relies upon represents Husband's gross income, not his adjusted gross income, because it does not incorporate the self-employment tax deduction set forth in the Guidelines. As stated above, the Guidelines define adjusted gross income as "the net determination of a parent's income, calculated by modifying the parent's gross income as follows: . . . (b) Deducting from gross income any applicable self-employment taxes being paid by the parent[.]" Tenn. Comp. R. & Regs. 1240-02-04-.02(1). Furthermore, the Guidelines state: "Any self-employment tax paid up to one-half of the maximum amounts due in a year shall be deducted from gross income as part of the calculation of a parent's Adjusted Gross Income, as indicated in Part II of the CS Worksheet." Tenn. Comp. R. & Regs. 1240-02-04-.04(4)(e). Thus, the trial court correctly added the $7,000 housing gift to Husband's monthly adjusted gross income as is required by the Guidelines.

Accordingly, we find no error with the trial court's calculation of Husband's adjusted gross income for child support purposes. Thus, the award of child support is affirmed.

### III. CLASSIFICATION OF PROPERTY

Husband challenges the trial court's classification of the Cabin Property and the limited partnership interest in BCV (Berry's Chapel Ventures) as marital property, insisting that each should have been classified as his separate property for several reasons. Wife contends the trial court correctly classified both assets as marital property.

Tennessee is a "dual property" state, meaning it recognizes both marital and separate property. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009) (citing Tenn. Code

Ann. § 36-4-121; *Eldridge*, 137 S.W.3d at 12). Because a trial court has authority to divide only marital property, "as a first order of business, it is incumbent on the trial court to classify the property, to give each party their separate property, and then to divide the marital property equitably." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988).

Tennessee Code Annotated § 36-4-121(b)(2)(A) defines marital property as

all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing date.

Generally, property acquired by either spouse during the marriage is presumed to be marital property. *Long*, 642 S.W.3d at 819 (citing *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007)). However, property acquired "at any time by gift, bequest, devise or descent" is statutorily defined as separate property. *See* Tenn. Code Ann. § 36-4-121(4)(D). Thus, even if an asset was acquired during the marriage, "a party may rebut any presumption that the property is marital by demonstrating that the property actually was a gift to that spouse alone." *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998).

The party asserting a gift must demonstrate, by clear and convincing evidence, "the intention by the donor to make a present gift coupled with the delivery of the subject of the gift by which complete dominion and control of the property is surrendered by the donor." *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1996) (citing *Lowry v. Lowry*, 541 S.W.2d 128 (Tenn. 1976); *Arnoult v. Griffin*, 490 S.W.2d 701 (Tenn. App. 1972)). The totality of the circumstances is used to measure donative intent. *Trezevant v. Trezevant*, 568 S.W.3d 595, 615 (Tenn. Ct. App. 2018) (citations omitted).

However, "[a] trial court's ultimate 'classification and division of marital property enjoys a presumption of correctness and will be reversed or modified only if the evidence preponderates against the court's decision.'" *Long*, 642 S.W.3d at 821 (quoting *Trezevant*, 568 S.W.3d at 607).

With these standards in mind, we first consider the trial court's classification of Husband's interest in BCV. We then turn to the classification of the Cabin Property.

A.  BCV

Husband contends that the trial court erred as a matter of law when it classified his interest in BCV as marital property. As noted above, the Family Trust, of which Husband and his sister are the sole beneficiaries, originally owned a 98% limited partnership interest

- 15 -

in BCV. Because Husband's interest in BCV originated as a 49% beneficial interest in the Family Trust, Husband contends that it is "a mere expectancy" which is neither marital nor separate property. Alternatively, if we find that Husband possesses any ownership interest in BCV, Husband contends that such interest was a gift from his father and is therefore separate, not marital, property.

For her part, Wife avers that Husband's interest in BCV changed at some point after the formation of the limited partnership on November 1, 2004, such that the Family Trust was discarded; therefore, Husband became a 49% owner in his own right, free of the discarded trust. She also contends that Husband failed to present any evidence that he received this interest as a gift sufficient to rebut the presumption that it is marital property. If, however, this court finds that Husband's interest in BCV is his separate property, Wife avers that any appreciation of BCV during the marriage is marital property because both she and Husband substantially contributed to its preservation and appreciation.

A.

We begin with Husband's contention that the trial court erred in classifying his interest in BCV as marital because it originated from his 49% beneficiary interest in the Family Trust and is therefore a "mere expectancy" under § 35-15-504(a) of the Tennessee Uniform Trust Code.

It is undisputed that BCV's partnership agreement dated November 1, 2004, named Husband's father and mother as the general partners of BCV, each with a 1% ownership interests, and the Robeson Family Trust, of which Husband and his sister were the beneficiaries, as limited partner with a 98% ownership interest. Thus, at the time of BCV's formation, Husband and his sister each possessed a beneficial interest in the partnership through the Family Trust.

While the record is not clear as to precisely when the Family Trust ceased being a limited partner of BCV, the evidence preponderates in favor of finding that Husband and his sister succeeded or replaced the Family Trust as the limited partners of BCV at some point after November 1, 2004. Stated differently, for several years prior to the commencement of this divorce action, Husband's family cast aside the Family Trust and recognized Husband and his sister as limited partners with each directly owning a 49% interest in BCV. This is evidenced by, *inter alia*, the K-1 tax forms that Husband received from BCV from 2016 to 2021, which list Husband as an individual partner with a 49% share, along with BCV's tax returns from that period, which list Husband, his sister, and his parents as partners, but do not list the Family Trust. Further, Wife testified that from at least 2016 to 2021, she and Husband paid the personal income tax liability associated with retained earnings of BCV as evidenced by their joint income tax returns. Specifically, the K-1s issued to Husband from BCV for this period reported $177,305.00 as Husband's share

of income from real estate transactions and interest.[14] For these reasons, we conclude that Husband owned a 49% ownership interest in BCV at the time of trial. Thus, we must now determine whether Husband's interest in BCV is his separate property or marital property.

B.

Under Tennessee law, a partnership interest is intangible personal property. *Associated P'ship I, Inc. v. Huddleston*, 889 S.W.2d 190, 194 n.2 (Tenn. 1994) (citing *Omnicon, Inc. v. King*, 688 S.W.2d 818 (Tenn. 1985)). We have determined that Husband became a limited partner in BCV, free of the Family Trust, during the parties' marriage. Thus, the initial presumption is that Husband's interest in the partnership is marital property. *See Long*, 642 S.W.3d at 819. Nevertheless, Husband contends that he successfully rebutted this presumption by clearly and convincingly demonstrating that it was a gift from his father. *See Hansel*, 939 S.W.2d at 112. Wife insists he did not.

"A gift is simply a voluntary transfer of property to another made gratuitously and without consideration." *Alexander v. Alexander*, No. 8, 1988 WL 28562, at *3 (Tenn. Ct. App. Mar. 28, 1988) (citing *Black's Law Dictionary* 350 (5th ed. 1983)). The establishment of a gift requires proof of two elements: (1) the intent of the donor to make a present gift; and (2) the delivery of the property to the donee such that the donor has relinquished dominion and control over the property. *Dunlap*, 996 S.W.2d at 814–15. The totality of the circumstances is used to measure donative intent. *Trezevant*, 568 S.W.3d at 615.

In determining that Husband failed to meet his burden of proving that his interest in BCV was a gift, the trial court found as follows:

> Husband testified he was unaware he had received the partnership interest, did not know when he had acquired it, and was not certain how he acquired it, stating, "I was never aware of that, so I guess it was a gift." Following a leading question by his counsel, to which a successful objection was interposed, Husband stated he was aware he received the property by gift. Given Husband's failure to provide forthright and consistent answers throughout trial, and on this point in particular, the Court finds Husband's testimony insufficiently credible to satisfy his burden of clear and convincing evidence.
>
> Husband conceded he had no documents, statements, gift tax returns, or any other evidence supporting the existence of a gift. Furthermore, although Husband testified he made no financial contributions in exchange for his

---

[14] Had the Family Trust remained the limited partner of BCV, the K-1 would have been issued to the trust, not Husband, and the trust, not Husband and Wife, would have been responsible for paying the income tax.

interest, the record reflects he is directly and actively engaged in managing the partnership properties but takes no regular income. And not only does Husband take no income, he and Wife annually paid personal income tax on retained partnership earnings. Based on these facts, the Court concludes Husband did not rebut the presumption his interest in Berry's Chapel Ventures LP is marital property for purposes of equitable distribution.

(Footnotes omitted).

We note, as Husband effectively argues in his brief, that the trial court erroneously relied on facts occurring after the conveyance of the purported gift to conclude that it was not a gift. This was error, as Husband contends, because Husband's post-gift "management" of BCV properties is not relevant to whether he received his interest as a gift. *See Long*, 642 S.W.3d at 820 (finding that the husband's subsequent contributions to the family partnership were not relevant to whether the wife originally received her partnership interest as a gift). This error, however, is not dispositive of this issue.

To support her argument that Husband's interest in BCV is marital property, Wife relies on the facts and reasoning in *Long v. Long*, 642 S.W.3d 803 (Tenn. Ct. App. 2021), a case cited by the trial court. In *Long*, the wife's parents formed a partnership entity known as "Pioneer Properties." *Id.* at 806. Although the wife acquired her partnership interest in Pioneer Properties during the marriage, she contended that it was her separate property because it was a gift from her parents to her alone. *Id.* at 807. The trial court disagreed, finding that the wife had failed to rebut the statutory presumption that her interest was marital property. *Id.* at 819–20. Namely, the court found that the wife "did not produce evidence of payment of gift taxes or gift tax returns concerning the supposed gift by Wife's parents, and both Wife's mother [L.W.] or brother [S.R.] had no information in response to Husband's questions concerning gift taxes or gift tax returns." *Id.* at 819. The trial court further found that the wife's testimony that her interest was a gift to her alone lacked credibility. *Id.* In affirming the trial court's classification, we noted that the wife "did not present any other proof, apart from her testimony and that of [her mother and brother], that her partnership interest was a gift from her parents[,]" *id.* at 822, and that the trial court made an express credibility determination in declining to accept the wife's testimony. *Id.* at 823. **We further found that "the partnership agreement does not support a finding that Wife's interest in Pioneer Properties was a gift[]" because it indicated that each partner, including the wife, had made capital contributions to the partnership**. *Id.* at 823 (emphasis added). Accordingly, we found that "Wife's evidence offered in support of the Pioneer Properties interest as a gift was not clear and convincing." *Id.* at 824.

Here, like the wife in *Long*, Husband relies primarily on his testimony and the testimony of his father to support his assertion that he received his interest in BCV by gift. As noted in the final order, the trial court did not find Husband's testimony on this point to be credible. Further, the testimony of a beneficiary is generally insufficient to establish an

*inter vivos* gift. *Long*, 642 S.W.3d at 821 (citing *Harris v. Taylor*, No. W2004-02855-COA-R3-CV, 2006 WL 772007, at *4 (Tenn. Ct. App. Mar. 28, 2006)).

Nevertheless, "'[i]ntent is determined from the totality of the circumstances.'" *Id*. (quoting *Trezevant*, 568 S.W.3d at 615). While we agree with the trial court's finding that the testimony of Husband and his father on this issue was inconsistent and vague, there is no evidence that Husband had any role in the formation of BCV and no evidence that he made any contribution to or for the benefit of BCV prior to the formation of BCV or delivery of the limited partnership interest to Husband and his sister. In fact, there is no evidence that disputes the testimony of Husband's Father who testified that he formed BCV with his own assets and without any contribution from or participation by Husband.

While Wife relies on the *Long* decision, Husband relies on our ruling in *Telfer v. Telfer*, No. M2012-00691-COA-R3-CV, 2013 WL 3379370 (Tenn. Ct. App. June 28, 2013) (Tenn. Oct. 16, 2013). In *Telfer*, the wife's father "was the chairman and owner of the RJ Young Company." *Id*. at *1. Approximately ten years into the parties' marriage, the wife's father decided "to transfer ownership of some of his assets to [the wife] through the creation of business entities, in order to avoid the payment of gift and inheritance taxes upon his death." *Id*. One of the new companies was Young Leasing, LLC. *Id*. Importantly, neither the husband nor the wife "was involved in setting up Young Leasing, and [the wife] was not present when the company was created." *Id*. Records indicate that the wife received a 90% interest in Young Leasing in exchange for a $900 payment made on her behalf. *Id*. However, the Wife testified that she did not make the $900 capital contribution to form the company. *Id*. at *3. She claimed that she "was not privy to how these companies were set up, but I know I did not write a check or bring my own money into this." *Id*. The wife's father testified that he believed the $900 came from RJ Young, and an expert witness hired by the husband testified that the $900 came from RJ Young. *Id*.

Like the company in *Telfer*, which was formed by the wife's father without her input, BCV was formed by Husband's Father with no input from Husband. As Husband testified at trial, "I was never aware of that [receiving a partnership interest in BCV], so I guess it was a gift," which testimony is similar to the wife's testimony in *Telfer* that she "was not privy to how these companies were set up." *Id*. at *3.

The *Telfer* court also ruled that the husband had offered no evidence that the source of the $900 payment was marital funds. *Id*. at *8. Similarly, there is no evidence in the case at bar that Husband participated in the funding of BCV or made a capital contribution in exchange for his 49% interest. All of the evidence indicates that BCV's startup capital came from Husband's Father. The lack of a capital contribution by Husband to BCV further distinguishes this case from *Long*, where the wife's interest in the family business was found to be marital property, in part, because the partnership agreement forming the business stated that she had made a capital contribution. *Id*. at 823. Here, there is no evidence that Husband contributed any startup capital to BCV.

We also find it significant that Husband's Father structured BCV such that Husband and his sister would receive equal 49% interests in the family partnership. This is significant because we have previously found the transfer of property from a parent to *multiple children* to be a gift when one of the children later gets divorced. *See, e.g., Strode v. Strode*, No. M2007-00265-COA-R3-CV, 2008 WL 2229505, at *1–2 (Tenn. Ct. App. May 29, 2008) (finding that real property transferred to the husband and his sister by their parents was a gift); *Gant v. Gant*, No. M2015-02160-COA-R-CV, 2017 WL 417225, at *6 (Tenn. Ct. App. Jan. 31, 2017) (finding that the transfer of one hundred shares each of the family oil company from the father to his two sons was a gift).

As previously explained, the party asserting a gift must demonstrate, by clear and convincing evidence, the intention by the donor to make a gift, coupled with delivery, "by which complete dominion and control of the property is surrendered by the donor." *Hansel*, 939 S.W.2d at 112 (citations omitted). Here, there is no dispute that Husband's Father surrendered control of the 98% limited partnership interest in BCV when that interest was delivered to the family trust. Thus, the issue at hand is that of donative intent.

We measure donative intent based on the totality of the circumstances. *Trezevant*, 568 S.W.3d at 615. Having considered the relevant facts existing prior to the delivery of the gift, they being that Husband made no contributions to the capital of BCV, that he played no role in its formation, and that Husband and his sister received equal interests in BCV, we find that the totality of the circumstances clearly and convincingly establish that Husband's interest in BCV was a gift from his father that constitutes his separate property. Thus, we hold that Husband has overcome the evidentiary presumption that it is marital property.

Having found that Husband's interest in BCV is his separate property, we now turn our attention to whether Husband and Wife substantially contributed to the preservation and appreciation of BCV during the marriage to an extent that increased the value of Husband's separate property and, if so, in what amount.

The trial court found that, assuming Husband's interest in BCV was gifted to him, "the value by which his interest appreciated during the marriage would be marital property pursuant to Tenn. Code Ann. § 36-4-121(b)(2)(B)(i) and [case law]." The court based its finding that Husband substantially contributed to the preservation and appreciation of BCV on the fact that Husband "directly and actively managed the leases for partnership real property . . . [and] characterized himself as 'the back up guy,' 'the face guy,' and 'the P.R. person' for the partnership." It also found that Wife made a substantial contribution to the preservation and appreciation of BCV.[15] We note, however, that the trial court's only

---

[15] The trial court did not assign a value to the resulting appreciation.

findings relating to Wife's contributions to the preservation and appreciation of BCV are as follows: "Wife substantially contributed to the appreciation of Husband's interest by performing the vast majority of homemaking and parenting, which allowed Husband the time and energy to actively manage partnership properties."

Husband contends the evidence at trial preponderates against the trial court's finding that both spouses "substantially contributed" to the preservation and appreciation of BCV. Wife disagrees, insisting that the evidence supports the trial court's findings.

Tennessee law provides that marital property includes the appreciation on "property determined to be separate" so long as "each party [has] contributed to its preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(2)(B)(i). Both the "owning" spouse and the "non-owning" spouse must substantially contribute to the preservation and appreciation of the asset for its increase in value to become marital. *Keyt v. Keyt*, 244 S.W.3d 321, 329 (Tenn. 2007). "[T]he focus in most cases is directed to whether the non-owning spouse's contributions are sufficient to meet the 'substantial contribution' standard." *Id.*

Although the spouses' contributions may be "direct" or "indirect," they must be substantial. *Id.* (citing Tenn. Code Ann. § 36-4-121(b)(1)). Put another way, each spouse's contributions must be "real and significant." *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Additionally, each spouse must contribute to both preservation and appreciation. *See Langschmidt v. Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002) ("As we stated in *Harrison*, the appreciation of Husband's separate property during the marriage may be classified as marital property only if Wife substantially contributed to its preservation *and* appreciation.") (emphasis in original). Mere preservation of the value of the asset is not enough. Furthermore, there must be some link between the marital efforts of each spouse and the preservation and appreciation of the separate property. *Langschmidt*, 81 S.W.3d at 746. Appreciation on separate property will not be classified as marital if it is "entirely market driven." *Id*. at 746.

Whether a spouse has substantially contributed to the preservation and appreciation of an item of separate property is an issue of fact. *Keyt*, 244 S.W.3d at 329. We review a trial court's findings of fact with a presumption of correctness, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d).

In the case at bar, Wife has failed to prove that she *substantially contributed* to the preservation *and* appreciation of BCV. The trial court's only finding concerning Wife's contribution to the appreciation of Husband's interest in BCV was that of "performing the vast majority of homemaking and parenting, which allowed Husband the time and energy to actively manage partnership properties." In *Herbison v. Herbison*, No. M2008-00658-COA-R3-CV, 2009 WL 1634914 (Tenn. Ct. App. Jun. 10, 2009), this court considered whether the wife in that case was entitled to an equitable share of the preservation and appreciation of a medical equipment company that Husband had started before the

marriage. *Id*. at *1. The wife in *Herbison* contended that she had contributed to the preservation and appreciation of the husband's company by, *inter alia*, caring for the parties' children and their home, which enabled the husband to focus his efforts on managing the business. *Id.* at *6. We noted that "[i]n some instances, such indirect activities may serve as the basis for a finding of a substantial contribution, **providing there is a link between the non-owning spouse's contributions and the increase in value."** *Id*. (citing *Keyt*, 244 S.W.3d at 329 n. 10; *Brown*, 913 S.W.2d at 167–68) (emphasis added). In that case, however, we found that the wife's contributions were not sufficiently linked to the increase in the value of the company as to constitute a substantial contribution to its preservation and appreciation. *Id*. Similarly, there is no such link in the case at bar.

For the foregoing reasons, we hold that Wife failed to prove that both spouses, she and Husband, substantially contributed to the preservation and appreciation of BCV as is required under Tennessee Code Annotated § 36-4-121(b)(2)(B)(i). *See Keyt*, 244 S.W.3d at 329 (finding that an increase in value to separate property during a marriage is only considered marital property if *both spouses* substantially contributed to the property's appreciation) (emphasis added) (citations omitted).

Accordingly, we reverse the trial court's finding that appreciation of BCV during the marriage constitutes marital property. To the contrary, it is Husband's separate property.

## B. The Cabin Property

Husband also contends that the trial court erred in classifying the Cabin Property as marital property.[16] As mentioned previously, the Cabin Property was quitclaimed solely to Husband by his father during the parties' marriage on August 2, 2007. Although the trial court classified the parcel as marital property, Husband claims that the totality of the circumstances demonstrate that his father intended the Cabin Property to be a gift. Specifically, he claims that the language of the quitclaim deed evinces his father's intent to gift the Cabin Property to him individually. He further claims that the trial court erroneously relied upon post-quitclaim facts in determining that the Cabin Property was "wholly marital." Wife contends that the trial court correctly classified the Cabin Property as marital because "the evidence was clear that the parties acquired the 7.6 acre Hyde Road Property with the intent that it become their marital home."[17]

Like BCV, the Cabin Property was acquired during the marriage and is presumptively marital property for purposes of equitable distribution. *See Long*, 642

---

[16] The adjoining 50-acre parcel which Husband purchased prior to the marriage is not at issue on appeal.

[17] Wife presents no argument regarding the appreciation of the Cabin Property during the marriage.

S.W.3d at 819. We reiterate that, to rebut this presumption and prove that the Cabin Property was a gift, Husband has the burden of proving donative intent and delivery with clear and convincing evidence. *See Hansel*, 939 S.W.2d at 112. As was the case with BCV, delivery is not at issue,[18] only donative intent.

We begin by noting that the quitclaim deed identifies Husband's father as the grantor and Husband as the sole grantee, stating that "Grantor, in consideration of valuable consideration, does release and forever quitclaim to grantee all its right, title, and interest in and to [the Hyde Road Property] situated in GILES County, Tennessee." We agree with the trial court's statement that this is "some evidence the property was intended to be separate." However, while the language of a quitclaim deed may serve as "evidence of an intent to convey ownership," *Brewer*, 2011 WL 532267, at *3, it is not "conclusive evidence of a gift in every case." *Denton v. Denton*, 33 S.W.3d 229, 233 (Tenn. Ct. App. 2000). As we have noted, donative intent must be determined from the totality of the circumstances. *Trezevant*, 568 S.W.3d at 615.

Upon a thorough review of the record, we are persuaded by the trial court's reasoning that the Cabin Property was marital property. In pertinent part, the trial court stated in its final order:

> The Court concludes Husband did not present clear and convincing evidence the cabin property was acquired by him individually within the meaning of Tenn. Code Ann. § 36-4-121(b)(4)(D). Specifically, Husband did not present clear and convincing evidence his parents intended to give this tract to him alone or that he received it individually. The quitclaim deed for the property bears only Husband's name, which is some evidence the property was intended to be separate. However, "the classification of property does not depend on the state of its record title but on the conduct of the parties," *Altman v. Altman*, 181 S.W.3d 676, 680-81 (Tenn. Ct. App. 2005); and donor intent with respect to a gift must be determined from the totality of the circumstances. *See Long*, 642 S.W.3d at 822; *Trezevant*, 568 S.W.3d at 615; *Dunlap*, 996 S.W.2d at 815.
>
> **The evidence reflects the log cabin was conceived as a marital home for the parties. Wife testified the cabin "was built under the understanding that it was for us." She explained: "We met with the builders. We designed the layout. We found the logs for both of the rooms in the cabin.**

_____

[18] It is undisputed that the quitclaim deed was recorded in the Giles County Register of Deeds on August 7, 2007, which satisfies the element of delivery. *See Brewer v. Brewer*, No. M2010-00768-COA-R3CV, 2011 WL 532267, at *3 (Tenn. Ct. App. Feb. 14, 2011) ("The language of the deed is evidence of an intent to convey ownership, and the recording of the deed is evidence of delivery.") (citing *Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 WL 1077952, at *11 (Tenn. Ct. App. Sept. 14, 2001)).

**We hired people to come out. We basically designed the whole thing with the understanding this was our cabin." Wife's uncle sourced materials for a kitchen addition.** As a result of Wife's becoming pregnant with the parties' first child, H.R., the parties decided to enlarge the under-construction cabin. **Conveyance of legal title by Husband's parents coincided with completion of the cabin and H.R.'s birth**. A few months later, in June 2008, Husband's parents loaned to Husband and Wife $225,000 secured by the Hyde Road real property, memorialized by a promissory note executed by Husband and Wife. Husband's parents forgave this loan over a period of four years, "a certain amount each year per person," including Wife and the parties' children. The parties paid taxes on the property through 2013 and again in 2019; and, they paid the utility and insurance bills for the property. The parties ultimately decided the cabin was "too far out to consider for full time," but they stayed there throughout the marriage. Several years after the cabin was built, Husband and Wife were interviewed about the property for a feature in Country Living magazine. Based on those interviews, the magazine wrote: [Travis] and Katherine discovered they were expecting, and the blueprint for that modest one-room shack expanded to a 1,300-square-foot family retreat. Travis secured additional reclaimed logs from a barn and a smokehouse to create a master bedroom, a large screened porch, and a loft for the children (they now have two: a son, 5, and daughter, 2). Travis and Katherine also partnered with the Land Trust for Tennessee on a conservation easement, ensuring that, even when they're gone, the property won't be commercially developed. Instead, it will continue to provide vistas for their children's children. Based on a careful review of the record, as well as a determination the testimony of Husband and his father was not credible, the Court concludes Husband did not present clear and convincing evidence the 7.6-acre Hyde Road cabin parcel acquired during the marriage was a gift to him individually, sufficient to rebut the presumption it is marital property. . . .

(Footnotes omitted) (emphasis added).

Husband contends that the trial court improperly considered facts that arose after the execution of the quitclaim deed, arguing that "Facts arising after the consummation of a gift are irrelevant to determining the intent of the donor at the time that the gift was made." We agree with Husband that some of the above facts occurred after the execution of the quitclaim deed and that post-quitclaim facts are not relevant to determining intent. Nevertheless, in concluding that the Cabin Property was marital property, the trial court also relied upon substantial and material facts that preceded the filing of the quitclaim deed, including that the parties designed the cabin themselves and expanded it upon Wife becoming pregnant with the parties' first child.

Based on the unique facts concerning this issue and the relevant authority, we agree with the trial court's conclusion that Husband failed to prove by clear and convincing evidence that the Cabin Property was intended to be his separate property. Thus, we affirm the trial court's decision that the Cabin Property is marital property. Our decision concerning this issue does not affect the trial court's ruling that the 50-acre tract that adjoins this property is Husband's separate property, which is not at issue in this appeal.

Having reversed the trial court's decision regarding the classification of Husband's interest in BCV, which was valued at $915,469.90, we vacate the trial court's division of the marital estate. Because the trial court will have to reconsider the equitable division of the marital estate, we also vacate the award of alimony in futuro to Wife. *See Ellis v. Ellis*, No. E2020-00869-COA-R3-CV, 2022 WL 3724768, at *11 (Tenn. Ct. App. Aug. 29, 2022) (citing *Barton v. Barton*, No. E2019-01136-COA-R3-CV, 2020 WL 6580562, at *11 (Tenn. Ct. App. Nov. 10, 2020)) (observing that an award of spousal support is only properly considered after the trial court has equitably divided the marital estate); *see also Trezevant*, 568 S.W.3d at 624 (finding that when the division of the marital estate is reversed on appeal awards of alimony should be vacated and remanded). We remand both issues to the trial court for further consideration and entry of a modified judgment.

## IV.    ALIMONY IN SOLIDO

Wife contends that the trial court abused its discretion in declining her request for attorney's fees as alimony in solido by applying an incorrect legal standard. Specifically, she claims that the court "f[ound] that the amendments to Tenn. Code Ann. §36-4-121 supersede §36-5-121" when it determined that it could not award attorney's fees as alimony in solido that had already been paid out of the marital estate as marital debt. Husband contends that the trial court should not have applied the amended version of § 36-4-121 because the divorce complaint in this case was filed before the effective date of the amendments. But nevertheless, Husband contends that the trial court properly declined Wife's request for attorney's fees as alimony in solido because her attorneys "had already been paid $122,265.10 *before* final judgment[], and the Trial Court ordered Husband to pay Wife more than enough money to cover the rest[.]"

An award of attorney's fees in a divorce action constitutes alimony in solido. *Gonsewski*, 350 S.W.3d at 113 (citing Tenn. Code Ann. § 36-5-121(h)(1)).[19] "A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's

---

[19] The most recent version of Tennessee Code Annotated § 36-5-121 provides that alimony in solido may be awarded for "for attorney fees and expenses incurred in connection with the proceedings through the date of the final hearing[.]" Tenn. Code Ann. § 36-5-121(h)(1)(B) (Effective March 31, 2022). In awarding alimony in solido, courts must consider the alimony factors, the total amount of fees incurred and paid by each party, and whether the fees were reasonable and necessary. *Id.*

fees and expenses." *Id.* (citing *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997)).

In addition, attorney's fees in divorce cases are now addressed in Tennessee Code Annotated § 36-4-121. This section was amended by 2022 Tennessee Laws Pub. Ch. 762 (S.B. 2385) on March 31, 2022 to include, in pertinent part, "unpaid attorney fees and expenses incurred in connection with the [divorce] proceedings through the date of the final hearing" in the definition of marital debt. Tenn. Code Ann. § 36-4-121(b)(1)(B). Based on the factors set forth in subsection (i),[20] courts may allocate responsibility for payment of these fees between the parties and order that all or a portion of these fees be paid out of the marital estate. *Id.* § 36-4-121(a)(1)(B).

In awarding the parties' attorney's fees out of the marital estate, the trial court relied upon the most recent version of Tennessee Code Annotated § 36-4-121, which became effective March 31, 2022. We note that, while the amended version of the statute was in effect at the time of trial in August 2022, it was not yet in effect when the divorce complaint was filed in December 2020. When awarding attorney's fees in a divorce case, a court must apply the version of the statute in effect when the divorce complaint was filed. *Burks v. Burks*, No. E2022-00776-COA-R3-CV, 2024 WL 979000, at *9 (Tenn. Ct. App. Mar. 7, 2024) (citing *Gergel v. Gergel*, No. E2020-01534-COA-R3-CV, 2022 WL 1222945, at *45 (Tenn. Ct. App. Apr. 26, 2022)).

---

[20] Tennessee Code Annotated § 36-4-121(i) provides as follows:

(1) In allocating responsibility for the payment of marital debt, the court shall consider the following factors:

(A) The purpose of the debt;
(B) Which party incurred the debt;
(C) Which party benefitted from incurring the debt; and
(D) Which party is best able to repay the debt.

(2) In allocating responsibility for payment of unpaid attorney fees and expenses incurred in connection with the proceedings, the court shall consider the factors in subdivision (i)(1) and the following factors:

(A) The total amount of attorney fees and expenses incurred by each party in connection with the proceedings;
(B) The total amount of attorney fees and expenses paid by each party in connection with the proceedings;
(C) Whether the attorney fees and expenses incurred by each party are reasonable under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct; and
(D) Whether the attorney fees and expenses were necessary.

That being said, we conclude that the trial court acted within its discretion in declining Wife's request for attorney's fees as alimony in solido. In her motion for attorney's fees, Wife requested alimony in solido in the amount of $153,704.10, "which represents $122,265.10 in fees paid from marital assets, $7,831.60 in expenses and $23,607.40 in unpaid attorney fees." Thereafter, in its order on attorney's fees, the trial court noted:

> On September 26, 2022, this Court entered an Agreed Order between the parties whereby Wife's outstanding attorney's fees and Husband's outstanding attorney's fees through September 26, 2022 were to be paid from marital funds held. At that time, Husband's attorneys had been paid a total of $88,470.60, and Wife's attorneys had been paid a total of $122,265.10 for their services.

It is well established that an agreed order is a binding contract that "represent[s] the achievement of an amicable result to pending litigation." *Silliman v. City of Memphis*, 449 S.W.3d 440, 448 (Tenn. Ct. App. 2014) (citing *Henderson v. Wilson,* No. M2009-01591-COA-R3-CV, 2011 WL 683905, at *4 (Tenn. Ct. App. Feb. 25, 2011)). As the trial court noted in its order, and as Wife acknowledged in her request for fees, $122,265.10 of the fees that Wife requested as alimony in solido were paid to Wife's attorneys from marital property pursuant to an agreed order. This agreed order represents a binding contract between the parties, and we are disinclined to find it unenforceable. *See Gurley v. King*, 183 S.W.3d 30, 37 (Tenn. Ct. App. 2005) ("[I]t is important that courts enforce and preserve agreements that were intended as binding"). We further agree that an award of the fees that Wife has already received under this agreement would constitute improper "double dipping." In view of these circumstances, we affirm the trial court's denial of Wife's request for attorney's fees as alimony in solido.

## V.    ATTORNEY'S FEES ON APPEAL

Wife also seeks an award of her attorney's fees incurred in this appeal. "This decision is soundly within the discretion of this court." *Dover v. Dover*, No. E2019-01891-COA-R3-CV, 2020 WL 7224368, at *16 (Tenn. Ct. App. Dec. 8, 2020) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In exercising our discretion, we consider, *inter alia*, "the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). Under the circumstances of this case, we conclude that each party shall be responsible for their own attorney's fees on appeal.

## CONCLUSION

We affirm trial court's calculation of Husband's income for purposes of child support and alimony. We further affirm the classification of the Cabin Property as marital property but reverse the classification of Husband's interest in BCV as marital property. We also reverse the trial court's finding that any appreciation of Husband's interest in BCV during the marriage constitutes marital property. Accordingly, we remand for the trial court to classify Husband's interest in BCV as his separate property. As a consequence, we instruct the trial court to reconsider the equitable distribution of the marital estate and to enter judgment accordingly. Further, after equitably dividing the marital estate, the trial court shall also reconsider Wife's award of alimony in futuro and enter judgment accordingly. We affirm the trial court's denial of Wife's request for attorney's fees as alimony in solido. Costs of this appeal are assessed one-half to the appellant, Travis Wilson Robeson, and one-half to the appellee, Katherine Poling Robeson, for which execution may issue if necessary.

_____
FRANK G. CLEMENT JR., P.J., M.S.